IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES RAY JONES,

          Plaintiff,

v.

TONY SANTOS, et al.,

          Defendants.

CV. 04-0009-PK

FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge:

    Plaintiff James Ray Jones, an inmate of the Eastern Oregon Correctional Institute ("EOCI"), filed this action *pro se* on January 12, 2004. Jones' complaint (#2), as originally filed, named defendants identified as Beachem, T. Cupp, Benjamin deHann, and Jeffrey L. Jones ("JLJ"). On March 13, 2004, Judge Marsh found that Jones had failed to state a claim upon

Page 1 - FINDINGS AND RECOMMENDATION

which relief could be granted as to defendants T. Cupp, Benjamin deHann and Jeffrey L. Jones and they were dismissed from this action (#13). On August 17, 2004, Jones amended his complaint (#25), naming four Doe defendants identified only as the Superintendent of EOCI, the Assistant Superintendent of EOCI, and two corrections officers of EOCI.

Subsequently, by not later than September 26, 2005, Jones obtained legal representation. With assistance of counsel on September 6, 2006, Jones amended his complaint a second time (#74), naming Tony Santos as the Superintendent of EOCI, and Lieutenant Thomas Sampson and Captain Al Hannon as EOCI corrections officers. Jones additionally named a number of "Doe" defendants: Doe No. 2 (identified as Assistant Superintendent of EOCI), Doe No. 5 (identified as an EOCI staff nurse), Doe No. 6 (identified as an EOCI staff physician), and Doe No. 7 (identified as that employee or those employees responsible for running the EOCI inmate communications system).

Jones' third amended complaint (#81), filed November 1, 2006, made no additional modification to the defendants named. Jones filed a fourth amended complaint (#119) on December 19, 2007, but it was struck by this court with an order to file a fifth amended complaint by February 15, 2008.

On February 15, 2008, Jones filed his fifth amended complaint (#130), naming the current defendants: Tony Santos (Superintendent of EOCI), Tom Cupp (Assistant Superintendent of EOCI), Lieutenant Thomas Sampson (an EOCI corrections officer), Captain Al Hannon (an EOCI corrections officer), Sheila Scott (an EOCI staff nurse), Debra Gardner (an EOCI nurse manager), and T. Martin Lowery, Toby O'Malley, Michael Burcham, Kenneth Crawford, David Lilienthal and Donald Riggen (EOCI staff members responsible for running the

Page 2 - FINDINGS AND RECOMMENDATION

EOCI inmate communications system).

Jones' fifth amended complaint states a Section 1983 claim alleging violation of Jones' Eighth Amendment right to freedom from cruel and unusual punishment. Specifically, Jones alleges that he was repeatedly raped by his cellmate over a period of months, that he made repeated efforts to report the ongoing rapes, and that, out of deliberate indifference to Jones' health and safety, defendants took no action to prevent further such rapes from occurring.

Now before the court is defendants' unenumerated Federal Civil Procedure Rule 12(b) motion to dismiss for failure to exhaust administrative remedies (#125). Defendants claim that Jones failed to initiate a formal grievance of his injury or, in the alternative, that any grievance he did file was untimely, did not raise the specific injury that is the subject of this action, and was not appealed as required by applicable regulations.

For the following reasons, this court finds that Jones made reasonable efforts to pursue available administrative remedies until it became apparent that no relief was available from those procedures. This court therefore recommends that defendants' motion be denied.

## LEGAL STANDARD

Failure to exhaust nonjudicial remedies is an affirmative defense that must be raised and proven by the defendant by an unenumerated Rule 12(b) motion. *See, e.g, Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). The Ninth Circuit has also instructed courts to address parties' contentions that a prisoner plaintiff failed to exhaust administrative remedies as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment. *Id.* "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at

Page 3 - FINDINGS AND RECOMMENDATION

1119-1120. However, in the event the court does so, it "must assure that [plaintiff] has fair notice of his opportunity to develop a record." *Id.*, at 1120, n. 14. The burden of establishing that administrative remedies have not been exhausted is on the defendants. *See id.*, at 1120.

In resolving disputed issues of fact in connection with a motion to dismiss for failure to exhaust administrative remedies, "the general view is that there is no right of jury trial as to th[ose] issue[s] and that the court has a broad discretion as to the method to be used in resolving the factual dispute." *Ritza v. International Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988).

## FACTUAL BACKGROUND

Jones was an inmate in the custody of the Oregon Department of Corrections ("ODOC") until September 11, 2007. He was housed at Eastern Oregon Correctional Institute from June 26, 2002, through January 15, 2003. The Superintendent of EOCI for most of that period – from August 31, 2002, through November 28, 2003 – was defendant Tony Santos. Defendant Tom Cupp was the EOCI Assistant Superintendent from September 2002 until January 2003.

From September 2002 through January 2003, plaintiff was regularly raped by his EOCI cellmate, referred to herein as JLJ. Following the first sexual assault by his cellmate, Jones sought medical attention from EOCI medical staff, complaining of rectal bleeding caused by the rape. Jones was seen by a nurse, Sheila Scott, who advised Jones to inform "Captain Beachem" of the rape. Scott also advised Jones that her report would be forwarded to Debra Gardner, who was Scott's supervisor; the record contains no evidence that her report was so forwarded.

On November 13, 2002, Jones addressed an inmate communication form (referred to as a "kyte") to "Captain Beachem" stating:

Page 4 - FINDINGS AND RECOMMENDATION

> I am writing to inform you of an sexual assault that's been happening to me since I have been placed in A4-08B. I'm in fear for my safety because I'm saying something. I need to be moved off this unit.
> <u>Please</u>!

Jones received no response to his kyte of November 13, 2002.

On December 22, 2002, Jones addressed a second kyte to Captain Beachem, this time stating:

> I am writing because I got no response from you on a kyte I sent to you on 11-13-02. I need to be moved out of Unit A4-08B. My cellie Jeff Jones has been repeatedly raping me. I fear for my safety because I'm speaking up, but this can't continue. Please respon[]d back. This is my second kyte to you.

Again, Jones received no response.

On January 15, 2003, defendants Defendants Sampson and Hannon, among other EOCI corrections officers, witnessed sexual contact taking place between Jones and JLJ. Jones reported the incident as a rape. Sampson, Hannon, and/or other corrections officers took Jones to hospital for treatment and for administration of a rape kit. Jones' report of sexual assault was investigated, including an investigation by Oregon State Police ("OSP"), and within a week Jones was transferred to a different institution.

At some time in or around May 2003, Jones attempted to file a tort claim with the Risk Management Division of the Department of Administrative Services.

On August 4, 2003, Jones wrote a letter to Christopher Brauer, District Attorney for Umatilla County, Oregon, requesting copies of the OSP investigation report and to inquire as to the "status of an indictment in this case."

On August 29, 2003, Jones sent a third kyte addressed to Captain Beachem. The August 29, 2003, kyte stated:

> Dear Captain, As you might remember I was raped multiple times by an inmate.

Page 5 - FINDINGS AND RECOMMENDATION

> You witnessed one instance in January of this year and helped State Police to investigate. I am trying to find out if charges have been filed against Jeffrey Jones. I wrote the District Attorney about possible indictments and await response. Can you help me? <u>I need the names of the two police officers that responded</u> to the call. Also, I could use the names of the two guards who witnessed the event with you. Did the State Police ever send you a police report and/or have you ever submitted a report about the instance? Should the DA not reply, I am considering filing a motion to the court.

On September 1, 2003, Jones wrote again to the District Attorney, requesting prompt response. The District Attorney's office responded that it had a backlog of cases, and advised that it would contact Jones once it was able to do so.

On September 28, 2003, Jones filed a grievance regarding Captain Beachem's failure to respond to any of Jones' three kytes. On October 3, 2003, the grievance coordinator advised Jones that efforts would be made to resolve his grievance through the kyte system.

In or around late September or early October 2003, Jones received a response from the Department of Corrections regarding his tort claim. Evidence in the record suggests that the Department balked at providing Jones with some of the documents he had requested. On October 2, 2003, Jones wrote back to the Department, reiterating his request for documents and advising that, because the Department stated that it "w[ould] not respon[]d to further communications on this claim," he would bring a civil action in federal court.

On October 11, 2003, Jones wrote to the Oregon State Police, requesting that formal charges be brought against JLJ.

On October 26, 2003, Jones filed a second grievance regarding Captain Beacham's failure to respond to Jones' several kytes. On December 4, 2003, Jones received a response from a "Captain M. Burcham," indicating that "Captain Beacham is no longer an employee with the [ODOC] therefore he has not received any communications that you may have written." The

Page 6 - FINDINGS AND RECOMMENDATION

response further indicated that "this matter has been referred to the Umatilla County District Attorney. Any request for information that you may have should be made to their office. . . ."

Ultimately, the district attorney's office of Umatilla County declined to pursue the rape allegations. This action followed.

## ANALYSIS

The Prison Litigation Reform Act of 1995 ("PLRA") provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement contains no element of discretion, but rather is wholly mandatory. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). Moreover, prisoners are required to exhaust all available administrative remedies before bringing a court action, regardless of whether the relief sought is available under any nonjudicial process, *see id.* at 734, and regardless of whether the available procedures meet federal standards of fairness and effectiveness, *see id.* at 739, n. 5. The exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences" whether brought under Section 1983 or under some other source of law. *Porter v. Nussle*, 534 U.S. 516, 520, 524 (2002). The United States Supreme Court recently affirmed that the PLRA exhaustion requirement cannot be satisfied by filing an untimely or otherwise procedurally defective administrative grievance or appeal. *See Woodford v. Ngo*, 548 U.S. 81, —, 126 S. Ct. 2378, 2382, 2385-2386 (2006).

However, the PLRA "does not require exhaustion when *no* pertinent relief can be obtained through the internal process." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005)

Page 7 - FINDINGS AND RECOMMENDATION

(emphasis original). This follows from the fact that "the modifier 'available' requires the possibility of some relief for the action complained of." *Id.*, *quoting Booth*, 532 U.S. at 738. Thus, "[t]he obligation to exhaust 'available' remedies persists [only] as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." *Id.* (emphasis original).

Jones submitted kytes on November 13 and December 22, 2002, complaining of sexual assault and requesting intervention, specifically transfer out of a cell-sharing arrangement with JLJ. At the time Jones submitted these kytes, the sexual assaults were ongoing. Later, after Jones had been transferred to a different institution and the assaults had ceased, Jones formally grieved the lack of response to the kytes of November and December 2002.

The currently applicable Oregon Administrative Rules governing the Department of Corrections' Inmate Communications and Grievance Review System specifically provide that informal attempts to resolve inmate issues, as through the kyte system, are a prerequisite to availability of formal grievance procedures. *See* OAR 291-109-0140(1)(a). However, the rules applicable in 2002 and 2003, when the complained-of events took place, provided, instead, that "Complaints submitted on Interview Requests (kytes) will not be subject to the provisions of this rule." OAR 291-109-00015(1)(e) (2000). That is, the rules governing inmate grievances during the relevant time period appear to have contemplated an informal avenue of submitting grievances – *i.e.*, through the kyte system – existing in parallel with the formal procedures outlined therein. Jones' kytes of November and December 2002 appear to have been a good-faith effort on Jones' part to avail himself of a valid grievance procedure expressly contemplated in applicable rules.

Page 8 - FINDINGS AND RECOMMENDATION

Following the date Jones was transferred to a different institution and was no longer subject to ongoing sexual assaults, Jones continued diligently to follow up on his kytes of November and December 2002. Among other things, Jones formally grieved the lack of response he received to his requests for protection from ongoing sexual assault, and requested further investigation. In response to Jones' first formal grievance in September of 2003, he was informed that there would be an attempt to resolve the issue through response to his first kyte. In response to his second formal grievance of October 2003, Jones was informed that his complaint had been referred to the Umatilla County District Attorney's office, and was directed to address further communications regarding the rape to that office.

The reasonable import of this response is that further efforts to pursue administrative remedies through the formal grievance system would be futile, in that no relief would be available pursuant to its procedures. *See Brown*, 422 F.3d at 936 ("awaiting the results of investigations triggered by the grievance process but outside of it can serve the purposes of the exhaustion requirement").

Because Jones made reasonable efforts to pursue available administrative remedies until it became apparent that available procedures would not afford relief, this court recommends denial of defendants' unenumerated Rule 12(b) motion to dismiss for failure to exhaust administrative remedies.

## CONCLUSION

For the reasons set forth above, this court recommends that defendants' unenumerated Rule 12(b) motion to dismiss for failure to exhaust administrative remedies (#125) be denied.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due April 7, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 24th day of March, 2008.

*/s/ Paul Papak*
Honorable Paul Papak
United States Magistrate Judge