IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JAMES RAY JONES, | CV. 04-0009-PK |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| TONY SANTOS, LIEUTENANT T. SAMPSON, CAPTAIN ALFRED HANNON, DEBRA GARDNER, SHEILA SCOTT, T. MARTIN LOWERY, TOBY O'MALLEY, MICHALE MURCHAM, KENNETH CRAWFORD, DAVE LILIENTAHL, DONALD RIGGEN, TOM CUPP | |
| Defendants. | |

PAPAK, Magistrate Judge:

Plaintiff James Ray Jones, an inmate of the Eastern Oregon Correctional Institute ("EOCI"), filed this action *pro se* on January 12, 2004. Jones' complaint (#2), as originally filed, named defendants identified as Beachem, T. Cupp, Benjamin deHann, and Jeffrey L. Jones ("JLJ"). On March 13, 2004, Judge Marsh found that Jones had failed to state a claim upon

Page 1 - FINDINGS AND RECOMMENDATION

which relief could be granted as to defendants T. Cupp, Benjamin deHann and Jeffrey L. Jones and they were dismissed from this action (#13). On August 17, 2004, Jones amended his complaint (#25), naming four Doe defendants identified only as the Superintendent of EOCI, the Assistant Superintendent of EOCI, and two corrections officers of EOCI. On December 8, 2004, Judge Stewart granted Jones's motion to substitute Doe No. 1 with Tony Santos, Superintendent of EOCI.

Subsequently, by not later than September 26, 2005, Jones obtained legal representation. With assistance of counsel, Jones amended his complaint a second time (#74) on September 6, 2006, naming Tony Santos as the Superintendent of EOCI, and Lieutenant Thomas Sampson and Captain Al Hannon as EOCI corrections officers. Jones additionally named a number of "Doe" defendants: Doe No. 2 (identified as Assistant Superintendent of EOCI), Doe No. 5 (identified as an EOCI staff nurse), Doe No. 6 (identified as an EOCI staff physician), and Doe No. 7 (identified as that employee or those employees responsible for running the EOCI inmate communications system).

Jones' third amended complaint (#81), filed November 1, 2006, made no additional modification to the defendants named. Jones filed a fourth amended complaint (#119) on December 19, 2007, but it was struck by this Court with an order to file a fifth amended complaint by February 15, 2008.

On February 15, 2008, Jones filed his fifth amended complaint (#130), naming the current defendants: Tony Santos (Superintendent of EOCI), Tom Cupp (Assistant Superintendent of EOCI), Lieutenant Thomas Sampson (an EOCI corrections officer), Captain Al Hannon (an EOCI corrections officer), Sheila Scott (an EOCI staff nurse), Debra Gardner (an EOCI nurse

manager), and T. Martin Lowery, Toby O'Malley, Michael Burcham, Kenneth Crawford, David Lilienthal and Donald Riggen (EOCI staff members responsible for running the EOCI inmate communications system). Jones' fifth amended complaint states a Section 1983 claim alleging violation of Jones' Eighth Amendment right to freedom from cruel and unusual punishment. Specifically, Jones alleges that he was repeatedly raped by his cell mate, JLS, over a period of months, that he made repeated efforts to report the ongoing rapes, and that, out of deliberate indifference to Jones' health and safety, defendants took no action to prevent further such rapes from occurring.

Now before the court is the defendants' Motion for Summary Judgment (#141) pursuant to Federal Civil Procedure Rule 56(b). For the following reasons, this Court finds that Jones' claims against all defendants except Santos are barred by the applicable statute of limitations, and that Santos did not violate Jones' constitutional rights. Defendant's Motion for Summary Judgment (#141) should therefore be granted.

## MATERIAL FACTS

Jones testified that his cell mate, JLJ, forced him to participate in a non-consensual sexual relationship beginning shortly after Jones moved into the cell in September, 2002. JLJ sexually assaulted Jones three to four times per month in the first two months they shared a cell and more frequently thereafter. Jones estimated that JLJ raped him at least forty times in total. JLJ, however, contended that the sexual relationship was consensual, and that Jones initiated the sexual activity.

Jones testified that sometime between September 2, 2002 and September 10, 2002, he visited a EOCI nurse during morning sick call because he was concerned about rectal bleeding

Page 3 - FINDINGS AND RECOMMENDATION

resulting from his sexual assaults. The nurse examined Jones and diagnosed hemorrhoids. Jones, however, insisted that sexual assaults by his cell mate caused the bleeding. The nurse instructed Jones to inform "Captain Beachem" of the sexual assaults, told Jones that she would also tell the doctor about Jones' situation, and asked Jones to return to his cell. Throughout the visit, Jones observed the nurse writing notes on the front and back of a yellow piece of paper.[1] In his fifth amended complaint (#130), Jones identified the EOCI nurse who examined him as defendant Sheila Scott.

The defendants, however, dispute that Scott ever treated Jones. Defendants present evidence that Scott did not handle sick calls or work morning shifts in September 2002 and note that there is no record of Jones attending a scheduled appointment or sick call in that month. Defendants also represent that the only way for an inmate to receive a physical examination is either at a scheduled appointment or sick call.

Jones testified that on November 13, 2002, two months after seeing the nurse, he sent a kyte addressed to "Captain Beachem."[2] That kyte stated:

> I am writing to inform you of an sexual assault that's been happening to me since have been placed in A4-08B. I'm in fear for my safety because I'm saying something. I need to be moved off this unit.
> Please!

Jones did not receive a response to his kyte. On December 22, 2002, Jones sent a second kyte addressed to "Captain Beachem" stating:

---

[1] Jones asserts that these and other records of his visit to the nurse were missing from his medical records and contends that the disappearance of these records is the result of a conspiracy to cover up the institution's failure to protect him from sexual assaults.

[2] The parties agree that Captain Beachem retired from EOCI in July 2001, over one year before Jones sent the kyte addressed to Captain Beachem.

Page 4 - FINDINGS AND RECOMMENDATION

> I am writing because I got no response from you on a kyte I sent to you on 11-13-02. I need to be moved out of Unit A4-08B. My cellie Jeff Jones has been repeatedly raping me. I fear for my safety because I'm speaking up, but this can't continue. Please respon[]d back. This is my second kyte to you.

Again, Jones received no response. Jones kept photocopies of both kytes and placed the originals in the locked box provided for such communication forms. Although Jones does not know exactly where the kytes went, he believes that the kytes had to be delivered to someone up the chain of command, either to defendant Santos or the director of the facility.[3] Jones admits, however, that he does not know whether Santos had specifically seen these kytes. Besides notifying the nurse and sending the two kytes to Captain Beachem, Jones did not inform anyone else at ODOC of the sexual assaults.

Santos and Cupp deny that they ever received the two kytes sent by Jones concerning his sexual assaults. Both also deny that they knew Jones suffered sexual assaults before January 15, 2003. Cupp denies any knowledge of problems with the system EOCI uses for processing inmate written communications. Similarly, defendants O'Malley, Burcham, and Lilienthal each dispute that they received the two kytes written by Jones.[4] They further contend that if they had received the kytes addressed to retired Captain Beachem, they would have responded to the kytes, since they knew that Captain Beachem no longer worked at EOCI.

JLJ sexually assaulted Jones for the final time on January 15, 2003. During that incident three or four correctional officers approached Jones' cell, hit the door, flashed the lights, and

---

[3] Jones described that ODOC policy requires staff to forward kytes addressed to unknown persons to an immediate supervisor.

[4] Defendant O'Malley works routing kytes within the mail room, while defendants Burcham and Lilienthal merely receive kytes addressed to them or those addressed to staff who are no longer at EOCI.

Page 5 - FINDINGS AND RECOMMENDATION

inquired about what was happening within the cell. After JLJ responded that he and Jones were working out, Jones alleges that the correctional officers left the cell area. They returned about ten minutes later, removed Jones from the cell, and placed him in administrative segregation. Officers then interviewed and physically examined Jones, collected his clothes, and transported him to a hospital. Shortly thereafter, ODOC transferred Jones to a different institution.

Defendants dispute that the officers ever left Jones alone with JLJ during the sexual assault on January 15, 2003. Instead, defendants Sampson and Hannon report that Sampson discovered JLJ and Jones engaged in sexual intercourse during a routine housing check. Subsequently, staff supervised JLJ and Jones while Sampson and Hannon returned to the officer's station. Staff then transported JLJ to administrative segregation while Sampson interviewed Jones within the cell. Further, both Sampson and Hannon deny that they knew JLJ was forcing Jones to have sex in exchange for protection prior to this January 15, 2003, incident.

## LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). Rather, the opposing party's response "must--by affidavits or as otherwise provided in this rule-- set out specific facts showing a genuine issue for trial." *Id.* "If the opposing party does not so respond, summary judgment should, if appropriate, be

entered against that party." *Id.* Summary judgment is not proper if material factual issues exist for trial. *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See*, *e.g.*, *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## DISCUSSION

The disputed issues on summary judgment are: (1) whether Jones' claims are barred by the applicable statute of limitations; (2) whether Jones has established a constitutional violation as to each defendant; and (3) whether the defendants are entitled to qualified immunity.

**I.    Statute of Limitations**

I agree with Jones that the two year statute of limitations applicable to Section 1983 actions must be tolled for the entirety of the period during which Jones exhausted his administrative remedies. The Ninth Circuit holds that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005). In a previous Findings and Recommendation (#139), this Court determined that Jones exhausted his administrative remedies on December 4, 2003, when he received a response to his October 26, 2003 grievance stating that "this matter has been referred to the Umatilla County District Attorney." The fact that the October 26, 2003 communication grieved ODOC's failure to respond to kytes complaining of sexual assaults and not to the assaults

themselves does not prevent the statute of limitations from tolling.[5]  Nor does a different result obtain because Jones had adequate time to name defendants after exhausting his administrative remedies, even without tolling.  Therefore, *Brown* dictates that the statute of limitations should be tolled at least until December 4, 2003, when plaintiff exhausted his administrative remedies.

I disagree, however, that the statute of limitations should toll after December 4, 2003, under the doctrine of equitable tolling.  For actions under 42 U.S.C. § 1983, federal courts apply "the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law."  *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (*citing Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999)).  Jones cites no authority, and I am aware of none, suggesting that federal courts in Oregon may apply equitable tolling to § 1983 cases.  Faced with a similar argument seeking equitable tolling in a § 1983 claim, United States District Judge Garr M. King noted recently that, because he was unable to locate any Oregon cases applying equitable tolling, he had "no precedent sho[w]ing that equitable tolling could apply to these claims under any circumstances."  Civil Case No. 06-143-KI *D.H.M. v. Or. Youth Auth.*, 2008 U.S. Dist. LEXIS 31567 (D. Or. Apr. 9, 2008).  I concur with Judge King's assessment and find that equitable tolling does not apply to Jones's § 1983 claims.

Moreover, Jones presents insufficient evidence to justify equitable tolling, even if it were available.  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

---

[5]Unlike in *O'Guinn* v. *Lovelock Carr. Ctr.,* 502 F.3d 1056, 1062 (9th Cir. 2007), where the court held that the statute of limitations did not toll during the filing of grievance about plaintiff's request for lower bunk due to poor balance because lawsuit concerned the unrelated denial of mental health treatment in violation of the ADA and Rehabilitation Act, here, Jones' grievance relates directly to the subject of his claim.

Page 8 - FINDINGS AND RECOMMENDATION

circumstance stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005), *citing Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). Until he first gained legal representation on September 26, 2005, Jones diligently pursued his legal rights but confronted no extraordinary circumstances preventing him from identifying the Doe defendants. Likewise, from the time that Jones obtained counsel until he left ODOC custody on September 11, 2007, his counsel faced no extraordinary circumstances preventing them from identifying and naming the Doe defendants. Although Jones' transfer from East Oregon Correctional Institution (EOCI) to Oregon State Prison (OSP) temporarily hampered his ability to communicate with his counsel, counsel present no evidence that the interruption in communication prevented them from identifying the unnamed defendants.[6] Further, Jones presents no evidence that his housing in administrative segregation affected his or his counsel's ability to engage in discovery efforts. Thus, Jones is only entitled to tolling of the statute of limitations until December 4, 2003, not during the entirety of his incarceration.

Since this claim is subject to a two year statute of limitations, the limitations period ended on December 4, 2005, two years after Jones exhausted his administrative remedies. Assuming without deciding that Jones properly named defendant Santos on December 8, 2004, by his motion to substitute (#31), Jones asserted his claim against Santos within the limitations period.

By contrast, the applicable statute of limitations bars Jones' claims against all defendants besides Santos. In § 1983 suits, federal courts apply state rules governing whether an amended

---

[6] In fact, in the same declaration (#53) explaining the difficulties associated with Jones' transfer, counsel went on to request a continuance "[d]ue to current workload," not because of Jones' unavailability to consult.

Page 9 - FINDINGS AND RECOMMENDATION

complaint relates back to the filing of the original complaint. *See Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989); *Clavette v. Sweeney*, 132 F. Supp. 2d 864, 875 (D. Or. 2001). The relevant Oregon statute, Or. R. Civ. P. 23C, allows substitution of a party outside the limitations period only if the party "(1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining any defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party brought in by amendment."

Here, none of the remaining defendants may be substituted outside of the limitations period pursuant to Or. R. Civ. P. 23C. First, since Jones initially named all the defendants except for Cupp on February 15, 2008, over two years after the limitations period ended, none received the required notice of the action. Moreover, Jones did not make a mistake concerning the identity of these defendants, but rather failed to identify them within the limitations period. *See Clavette*, 132 F. Supp. 2d at 875 (holding that a plaintiff's lack of knowledge regarding a defendant's identity is not a "mistake" for purposes of Or. R. Civ. P. 23C). Second, although defendant Cupp had sufficient notice of the action to prevent prejudice, Jones may not substitute him outside of the limitations period because Jones never made a mistake concerning Cupp's identity.[7] Thus, Jones' fifth amended complaint (#130) does not relate back to his original complaint and his claims against all defendants besides Santos are barred by the applicable

---

[7] Jones originally named Cupp in his first complaint (#2), but Judge Marsh dismissed the allegation against Cupp for failure to state a claim (#13). Subsequently, in his second complaint (#25), Jones named a Doe defendant with Cupp's title (Assistant Superintendent of EOCI). Finally, Jones named Cupp again in his fifth amended complaint (#130). Even assuming that Jones' renaming of Cupp constitutes a mistake and that Or. R. Civ. P. 23C permits Jones to substitute Cupp after the limitations period has expired, the claims against Cupp must be dismissed because Jones fails to create a genuine substantive issue for trial concerning Cupp's conduct. *See supra.*

Page 10 - FINDINGS AND RECOMMENDATION

statute of limitations.[8]

## II.  Existence of Constitutional Violation As To Each Defendant

The Supreme Court holds that a prison official may be liable under the Eight Amendment for denying an inmate humane conditions of confinement if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer* v. *Brennan,* 511 U.S. 825, 837 (1994). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Whether an official had the requisite knowledge of a substantial risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (internal citations omitted). By contrast, an official's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute a denial of constitutional protections. *Id*. at 838.

Here, Jones fails to create a genuine issue for trial concerning whether Santos, or any other defendant, denied him humane conditions of confinement. Jones fundamentally neglects the well-established requirement that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). Instead, Jones asserts the contrary in his opposition to defendants' motion (#148), arguing that he survives summary judgment merely because he "has made allegations in his Fifth Amended Complaint that, if proven, would establish that these

---

[8] Moreover, summary judgment with respect to defendants T. Martin Lowery, Kenneth Crawford, and Donald Riggen must also be granted because Jones did not serve these defendants with a summons and complaint.

Page 11 - FINDINGS AND RECOMMENDATION

defendants were aware of such a risk [of harm to Jones]."  Had Jones heeded Fed. R. Civ. P. 56(e)(2) and produced an affidavit to supplement his deposition testimony, he might have created genuine issues for trial concerning several defendants.  But, by failing to produce such evidence, Jones ensures the success of defendants' motion.

**A.     Santos**

Jones alleges in his fifth amended complaint (#130) that Santos failed to protect him from sexual assault because he: (1) received repeated requests in writing from Jones or other EOCI staff requesting Jones be transferred to escape repeated rapes by his cell mate, yet took no action; and (2) "implemented a policy so deficient that the policy itself was a violation of plaintiff's right to be free of cruel and unusual punishment, and was the moving force in allowing the rapes to occur."  Nevertheless, Jones fails to create a genuine issue for trial concerning either of these allegations.[9]

First, Jones testified that he did not know whether or not Santos had specifically seen the kytes he sent.  Consistent with Jones's testimony, Santos asserted that Jones never informed him or sent him a kyte concerning sexual assaults.  In fact, Santos declared that he learned of the sexual assaults only after the incident on January 15, 2003.  Because Jones presents no evidence that Santos actually knew Jones suffered sexual assaults before 2003, Jones fails to meet his burden of production to survive summary judgment on this allegation.

Second, Jones testified that, had staff been following ODOC policies concerning kytes and reports to medical staff, Jones' kytes should have reached either Santos or the director of the

---

[9] Jones neglects the requirement that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading" and instead rests primarily on the factual allegations contained within his fifth amended complaint (#130).  *See* Fed. R. Civ. P. 56(e)(2).

Page 12 - FINDINGS AND RECOMMENDATION

facility. Here, Jones' testimony does not raise a genuine issue about whether Santos actually knew of an excessive risk to inmate health or safety, let alone disregarded that risk. *See Farmer,* 511 U.S. at 837. Even assuming that staff violated ODOC policy by failing to forward the kytes to Santos, Jones produces no evidence that Santos either knew or inferred that the staff violated the kyte policy, thereby endangering Jones. Nor does Jones produce evidence concerning Santos's implementation of kyte processing policies substantiating his allegation that the policy itself was unconstitutional. Thus, Jones also does not satisfy his burden of production concerning Santos' allegedly unconstitutional implementation of ODOC policies.

      **B.**      **Other Defendants**

Even assuming that Jones properly named all the remaining defendants within the limitations period, Jones does not meet his burden to create a genuine issue for trial concerning whether any of these defendants unconstitutionally denied Jones humane conditions of confinement. *See Farmer,* 511 U.S. at 837.

Jones creates no genuine issue for trial regarding defendant Cupp. Jones alleges that Cupp failed to protect him from sexual assault because he: (1) received repeated requests in writing from Jones or other EOCI staff requesting Jones be transferred to escape repeated rapes by his cell mate, yet took no action; and (2) failed to enforce the policies and procedures in place to prevent such attacks. First, Jones offers no evidence to dispute Cupp's affidavit stating that Cupp "did not receive an inmate communication from Mr. Jones in September 2002 or November 2002 reporting that he was being sexually assaulted." Second, Jones offers no evidence to dispute Cupp's declaration that he was "not aware of any problems associated with the system used at EOCI for processing inmate written communications."

Jones also creates no genuine issue for trial concerning defendants Hannon and Sampson.

Page 13 - FINDINGS AND RECOMMENDATION

Jones alleges that Sampson and Hannon failed to protect him from sexual assault because they had knowledge that Jones was being repeatedly raped by his cell mate, yet took no action. Jones admits that he did not send kytes complaining of sexual assault to defendants Hannon or Sampson. Jones argues, however, that because Hannon and Sampson were officers in charge of his cell block, the kytes Jones wrote addressed to Captain Beachem should have gone up the chain of command to Hannon and Sampson. Thus, at most, Jones asserted that Hannon and Sampson should have known about the assaults, not that they actually knew of them. In contrast, both Hannon and Sampson declared that they had no knowledge of any forced sexual activity between Jones and his cell mate before January 15, 2003.

Jones also asserted that several ODOC officers saw JLJ sexually assaulting him on January 15, 2003, yet left him alone for ten minutes with JLJ in their cell before returning to rescue him. Here, too, Jones' neglects his burden of production. Had Jones produced an affidavit stating that Hannon or Sampson was among the officers who first observed Jones being raped, he could have created a factual issue for trial. On the current record, however, there is no dispute that Hannon and Sampson acted promptly to protect Jones during the sexual assault on January 15, 2003.

Moreover, Jones does not create a genuine issue for trial concerning defendant Scott. Jones alleges that Scott failed to protect him from sexual assault because, after Jones sought treatment from Scott for rectal bleeding resulting from rape by his cell mate, Scott: (1) told Jones she would inform a supervisor of the rapes, yet allegedly failed to do so; and (2) instructed Jones to contact "Captain Beachem," a retired EOCI employee. There is ample dispute in the record concerning whether Jones visited a nurse, and whether that nurse committed a constitutional violation. But, defendants prevail on the merits here simply because Jones offers no evidence

Page 14 - FINDINGS AND RECOMMENDATION

supporting the crux of his allegations: that Scott was the same nurse who treated him, told him she would inform a supervisor, and instructed him to contact Captain Beachem.[10] Scott, for her part, denies that she ever treated Jones in September or November of 2002. Moreover, defendants present evidence that Scott did not work during morning sick call in September 2002 and that Jones received no medical treatment (either scheduled or unscheduled) in that month.

Similarly, Jones creates no genuine issue for trial concerning defendant Gardner. Jones alleges that defendant Gardner failed to protect him from sexual assault because: (1) Scott informed Gardner of the sexual assaults and Gardner took no action to prevent them; and (2) Gardner "implemented a policy so deficient that the policy itself was a violation of plaintiff's right to be free of cruel and unusual punishment, and was the moving force in allowing the rapes to occur." First, Jones offers no evidence that any person actually informed Gardner about the sexual assaults suffered by Jones.[11] In fact, Jones' testimony that the nurse promised to relay his concerns to a "doctor" conflicts with his own allegation that the nurse informed Gardner, a non-physician nurse supervisor. Second, Jones produces no evidence that Gardner implemented a specific policy relating to supervision of medical staff, let alone that the policy she implemented constituted a cruel and unusual punishment.

Finally, Jones does not create a genuine issue for trial concerning defendants O'Malley, Burcham, and Lilienthal. Jones alleges that these defendants failed to protect him from sexual assault because they: (1) had knowledge of the sexual assaults, yet took no actions to prevent

---

[10] A simple affidavit by Jones asserting that Scott was, in fact, the nurse who treated him would have created a dispute of fact on this allegation sufficient to survive summary judgment.

[11] Again, Jones might have survived summary judgment on his claim against Gardner had he opposed defendants' motion by submitting evidence instead of merely repeating his allegations.

Page 15 - FINDINGS AND RECOMMENDATION

them; and (2) failed to follow correct kyte receiving, routing, and processing procedures that would have protected Jones from further harm.  First, Jones offers no evidence that any of the named defendants read the kytes, thereby gaining knowledge of Jones's sexual assaults.[12]  To the contrary, O'Malley, Burcham, and Lilienthal each dispute that they received kytes from Jones.  Second, Jones' testimony at most establishes that some officer took Jones' kytes out of the lockbox but failed to forward them to Captain Beachem's immediate supervisor as required by ODOC procedure, and that, consequently, no one responded to the kytes.  Jones, offers no evidence, however, that any of the named defendants were the officers who violated ODOC procedures by failing to forward the kytes to the appropriate party.

### III.    Qualified Immunity

Defendants fail to demonstrate that they are entitled to qualified immunity.[13]  Government officials performing discretionary functions are entitled to qualified immunity only if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In analyzing qualified immunity, courts first decide whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the plaintiff alleges a constitutional violation, the next step is "to ask whether the right was clearly established."  *Id*.  A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in

---

[12] Jones again fails to present affidavits or other evidence necessary to create a factual dispute regarding these defendants.

[13] Because there are independent grounds to grant defendants' motion, the defendants' lack of qualified immunity does not change the result here.

Page 16 - FINDINGS AND RECOMMENDATION

the situation he confronted." *Id*. at 202, *citing Wilson v. Layne*, 526 U.S. 603, 615 (1999). Here, Jones alleges facts in his fifth amended complaint (#130) that, if proven, would show that the defendants violated his constitutional right to be free from cruel and unusual punishment. Additionally, a reasonable prison employee would know that failing to prevent sexual assaults of which the employee was aware would constitute unlawful conduct. *See Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000). Thus, defendants do not enjoy qualified immunity since their alleged failure to protect Jones from additional sexual assaults violates the clearly established Eighth Amendment right of prisoners to be free from sexual abuse. *See id*.

## CONCLUSION

For the foregoing reasons, I recommend that the court grant defendants' Motion for Summary Judgment (#141). A judgment should be prepared.

## SCHEDULING ORDER

Objections to these Findings and Recommendation, if any, are due September 10, 2008. If no objections are filed, then the Findings and Recommendation will be referred to a Unites States District Judge for review and go under advisement on that date. If objections are filed, any response to the objections will be due fourteen days after the date the objections are filed and review of the Findings and Recommendation will go under advisement on that date.

DATED this 26th day of August, 2008.

       /s/  Paul Papak
   Honorable Paul Papak
   United States Magistrate Judge